Gregory Weston **HATFIELD**, Plaintiff,

v.

Catherine **WILLIAMS** et al., **Defendants**.

No. 73–C–3081–W.

United States District Court,
N. D. Iowa, W. D.

July 2, 1974.

William A. Shuminsky, Daniel L. Jackson, Sioux City, Iowa, for plaintiff.

Lorna L. Williams, Sp. Asst. Atty. Gen., Des Moines, Iowa, Paul W. Deck, Asst. Woodbury County Atty., Sioux City, Iowa, for defendants Catherine Williams, Stilwill, Turner and Chwirka.

Charles L. Corbett, Sioux City, Iowa, for defendants Florence Crittenton Home and Ebbert.

## ORDER

McMANUS, Chief Judge.

This matter is before the court upon motions by defendants Florence Critten-

ton Home (Home) and Marilyn Ebbert for dismissal, resisted by plaintiff, and determination that this action may not be maintained as a class action, unresisted, filed December 13, 1973 and December 20, 1973, respectively.

In this action, plaintiff's unmarried mother sues on his behalf to vindicate alleged deprivations of constitutional rights incident to the Iowa adoption process for children of unmarried mothers, for his return to her custody and for money damages. Initially a three-judge court was convened in this matter pursuant to 28 U.S.C. §§ 2281, 2284. That court, in an order filed May 31, 1974, dismissed all defendants except the movants and found that it was thereby divested of jurisdiction under § 2281. The three-judge court then remanded the case to this court for determination of all remaining issues.

### I. Motion to Dismiss

Defendants Florence Crittenton Home and Marilyn Ebbert move for their dismissal as defendants, arguing that the jurisdictional grounds asserted by plaintiff are insufficient as to them. Defendants argue that jurisdiction over them cannot be grounded on 28 U.S.C. §§ 1343(3), (4) or 42 U.S.C. § 1983 because their actions are not under color of state law but rather were merely those of a private organization, albeit one acting pursuant to state statute. Defendants also contest general federal question jurisdiction based on 28 U.S.C. § 1331, alleging that the claims of the complaint notwithstanding, the amount in controversy is less than the required $10,000.01.

■■ It is the court's view that defendants Crittenton Home and Ebbert did act under color of state law and jurisdiction as to them is thus established under 28 U.S.C. § 1343(3), (4) and 42 U.S.C. § 1983.

The licensing cases cited by defendants in their very able brief, Ouzts v. Maryland National Insurance Co., 470 F.2d 790 (CA9 1972), and Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), for the proposition that action of a state licensee is not made state action or action under color of state law simply by virtue of the state license of the actor, are not precisely in point here. In these cases, state action was alleged on the ground that the bare grant by a state of a license to do certain acts (arrest by private persons of a bailed defendant in *Ouzts* and selling of alcoholic beverages in *Irvis*) made all subsequent conduct of the licensee action taken under color of state law, though this conduct was largely unregulated by state law. This contention was properly rejected.

Here, however, the state has provided detailed and comprehensive statutory direction for the accomplishment of the licensed activity. Iowa Code Chapter 238. This is a critical distinction, for unlike the defendants in the *Ouzts* and *Irvis* cases who were merely acting under a general state grant of authority, defendants here act under the specific authority of state law in the procedural details of their operation.

The cases cited by defendants involving U.C.C. self-help peaceable repossession, Bichel Optical Laboratories v. Marquette National Bank, 487 F.2d 906 (CA8 1973), and Adams v. Southern California First National Bank, 492 F.2d 324 (CA9 1973), miss the mark for the same reason. In all these cases, state law stops with a simple grant of permission, while in the instant case Iowa law not only licenses but prescribes how the licensee shall proceed to carry out its function.

This case presents a situation more closely analogous to the circumstances of Baldwin v. Morgan, 251 F.2d 780 (CA5 1958), and Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In *Baldwin*, the state Public Service Commission had ordered the segregation of railway station waiting

rooms. The actual administration of this policy was performed by the private company which operated the station. The Fifth Circuit held that this connection was sufficient to bring the company's activity within the "under color of state law" language of 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, and cited additional cases, Valle v. Stengel, 176 F. 2d 697 (CA3 1949), and Picking v. Pennsylvania R. Co., 151 F.2d 240 (CA3 1945), holding private, non-state parties subject to jurisdiction under these statutes.

In *Adickes*, adherence by a private restaurant to a state-compelled custom of racial segregation in eating places was held to require a finding of state action even though no state statute was directly involved. The Court found that "a State is responsible for the discriminatory act of a private party when the State, by its law, has compelled the act," and quoted from Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L. Ed.2d 323 (1963) to the effect that

When the State has commanded a particular result, it has saved to itself the power to determine that result and thereby 'to a significant extent' has 'become involved' in it.

The Court in *Adickes* also cited *Baldwin*, supra.

These decisions seriously attenuate whatever authority may be derived from the dicta in such cases as Jobson v. Henne, 355 F.2d 129 (CA2 1966), and Weyandt v. Mason's Stores, Inc., 279 F. Supp. 283 (D.C.1968), that the jurisdictional requirements of § 1983 "can rarely be satisfied in the case of anyone other than a State Official." This statement itself admits the existence of exceptions to the equivalence of state action and state officialdom. Furthermore, the single Supreme Court decision cited as authority for this proposition, Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), is barren of any such statement. Indeed,

the complaint therein did not allege that the defendants, who were private persons, had acted under color of state law, so the Court had no occasion even to consider predicating a finding of state action on the conduct of private individuals.

Finally, it has been said that

In order to state a cause of action under § 1983 it is necessary to allege facts that the purpose of the defendants in committing the acts complained of was to discriminate between persons or classes of persons.

Walker v. Bank of America National Trust & Saving Association, 268 F.2d 16 (CA9 1959), citing Agnew v. City of Compton, 239 F.2d 226 (CA9 1956). This pronouncement, at least insofar as it may be thought to restrict § 1983 jurisdiction to deprivation of equal protection, is of no continuing authority in the light of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). At any rate, plaintiff's complaint here when read as a whole sufficiently alleges discriminatory purpose.

In sum, the decision as to when the allegedly unconstitutional conduct of a private individual or organization is sufficiently related to the aegis of state authority to require its characterization as action taken under color of state law is frequently a difficult one, involving the placement of the instant fact pattern somewhere on the spectrum from purely private to clearly official action. While the factual situation here lies in an interstice between previous cases, it is the court's view that the defendants' action falls well toward the official end of the spectrum, measured by the cases discussed above.

This result makes unnecessary a determination of whether the jurisdictional amount required to support jurisdiction under 28 U.S.C. § 1331 has been shown.

## II. Class Action

Defendants also request a determination that this suit cannot be maintained as a class action, asserting that plaintiff's allegations fail to satisfy the requirements of either Fed.R.Civ.P. 23(a) or (b). It is the court's view that this motion is well taken with regard to Rule 23(a) and a decision as to 23(b) is accordingly unnecessary.

The party who seeks to utilize Rule 23 bears the burden of showing that he is entitled to do so within the provisions of the Rule itself. Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa.1968). The extent and method of carrying this burden have been sources of much judicial discussion, confusion and conflict, cf. Dolgow v. Anderson, 43 F.R.D. 472 (D.C.N.Y.1968), Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (D.C.N.Y. 1968), Yaffe v. Powers, 454 F.2d 1362 (CA1 1972), and Dionne v. Springfield, 340 F.Supp. 334 (D.Mass.1972), but it seems clear that it is not necessary "that the plaintiffs must finally establish their entire case before a preliminary determination of the class-action question can be made." *Philadelphia Electric,* supra.

It appears that the burden might correctly be expressed as requiring that the party asserting the class nature of the action either (1) state, in the pleadings or elsewhere, sufficient facts and argument to make a prima facie showing of Rule 23's applicability, or (2) in the absence of such showing, demonstrate to the court that discovery measures are likely to produce the information necessary for making a class action determination. Gillibeau v. City of Richmond, 417 F.2d 426 (CA9 1972). *Yaffe,* supra. In either case, the suit could then proceed as a class action until the prima facie showing was effectively rebutted or discovery negated the class nature of the suit.

In the instant case, plaintiff has done neither. The complaint essentially recites Rule 23 and this is insufficient. *Gillibeau,* supra. Specifically 23(a)(3), (4) requiring typicality of the representative's claims and adequate representation of the class do not appear from the pleadings and this court is unable to infer their existence from the facts of this case or any other filings herein. Indeed, it appears at this time that plaintiff's claim is atypical of the class purportedly represented and may conflict with the interests of those members of the class who desire their adoptive status to remain settled under the present Iowa statutes. Furthermore, plaintiff here is a baby, not a person capable of volition and the considered advancement of his own interests. Thus this action is maintained on his behalf by his mother and next friend, whose interests may not be wholly congruent with plaintiff's own or those of other members of the alleged class. In such a situation the continuation of this as a class action would be especially inappropriate.

Finally, the gravamen of this case is the constitutionality of certain sections of the Iowa adoption procedure, and the "determination of the constitutional question can be made by the Court . . . regardless of whether this action is treated as an individual action or as a class action. No useful purpose would be served by permitting this case to proceed as a class action." Ihrke v. Northern States Power Company, 459 F.2d 566 (CA8 1972).

It is therefore

Ordered

1. Motion to dismiss, denied;

2. Pursuant to Fed.R.Civ.P. 23(c) (1), this action is hereby declared not to be a proper class action and must be continued as an individual action only.